No. 690        July 22, 2026        619

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of E. R.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

E. R.,
*Appellant.*

Baker County Circuit Court
25CC04070; A188205

Thomas O. Branford, Senior Judge.

Submitted April 22, 2026.

Liza Langford filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Appellant challenges a judgment ordering civil commitment. The trial court ordered that appellant be committed to the custody of the Oregon Health Authority for a period not to exceed 180 days, based on appellant being a "person with mental illness." ORS 426.130(1)(a)(C) (2023), *amended by* Or Laws 2025, ch 559, § 5. The trial court found that, because of a mental disorder, appellant was a danger to himself, a danger to others, and unable to provide for his basic needs. ORS 426.005(1)(f)(A), (B) (2023), *amended by* Or Laws 2025, ch 559, § 4.

Appellant does not dispute that he has a mental disorder. Rather, he contends that the evidence was legally insufficient to support any of the three statutory bases on which the trial court relied for its judgment. The state argues that appellant's claim of error is unpreserved and does not constitute plain error. We agree with the state and affirm.

## I.  PRESERVATION

We recognize that civil commitment proceedings involve a "serious deprivation of liberty and social stigma" and are predicated on predictions of future behavior. *State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016). For that reason, before a person may be civilly committed, the state must prove the statutory criteria by clear and convincing evidence. *Id*.

When a person who was civilly committed disagrees with the ultimate decision to commit them, there are two different ways that the person may assign error on appeal, and which is chosen affects both preservation and the standard of review.

One way is to challenge the legal sufficiency of the evidence presented to the trial court. In a civil proceeding tried to the court, the legal sufficiency of the evidence may be challenged through a motion for involuntary dismissal based on insufficient evidence, ORCP 54 B(2), which is akin to a motion for directed verdict in a civil jury trial or a motion for judgment of acquittal in a criminal trial. *Venture Properties, Inc. v. Parker*, 223 Or App 321, 332, 336, 341 n 13, 195 P3d

470 (2008). Such a motion may be made expressly, or it may be made implicitly in closing argument. *See State v. R. W. G.*, 288 Or App 238, 240, 404 P3d 1131 (2017) (recognizing case law providing that, in a bench trial, "a party can preserve an insufficiency-of-the-evidence argument in a closing argument to the trial court"). If unsuccessful, the person may challenge on appeal the denial of that express or implied motion. We will then "view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's disposition and determine whether the evidence was legally sufficient to support civil commitment." *State v. A. M. W.*, 340 Or App 473, 474, 572 P3d 343 (2025); *cf. Miller v. Agripac, Inc.*, 322 Or App 202, 222, 518 P3d 957 (2022), *rev den*, 370 Or 827 (2023) (similar standard of review for denial of directed verdict); *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995) (similar standard of review for denial of motion for judgment of acquittal).

The other way is to challenge the trial court's application of the law to the facts expressly and implicitly found by the trial court. Civil commitment decisions were reviewed *de novo* prior to 2009, when *de novo* review became discretionary in most equitable proceedings. *Hammond v. Hammond*, 246 Or App 775, 777, 268 P3d 691 (2011). After 2009, we adopted the *Ball* standard of review for use in a variety of equitable proceedings, including civil commitment appeals. *See State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010) (on non-*de novo* review of civil commitment judgment,

"we are bound by the trial court's findings of historical fact that are supported by any evidence in the record; we further review the court's dispositional conclusions, predicated on those findings, for errors of law"); *see generally Dept. of Human Services v. A. S.*, 350 Or App 802, 816-29, ___ P3d ___ (2026) (Aoyagi, P. J., concurring) (discussing the expansion in use of the *Ball* standard after 2009). Under that standard, we accept the express and implied findings of the trial court and apply the law to those findings to determine whether the court reached a lawful disposition. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968).

In this case, we understand appellant to make the first type of challenge. That is, we understand him to claim

that the evidence itself was legally insufficient to support commitment, regardless of the trial court's specific findings. To preserve that type of claim of error, appellant had to move expressly or implicitly to dismiss based on legal insufficiency of the evidence. It is not enough to have argued that the fact-finder should not be *persuaded* by the evidence; the party must have challenged the *legal sufficiency* of the evidence. *R. W. G.*, 288 Or App at 240 (emphasizing the distinction).

Below, however, appellant did not challenge the legal sufficiency of the evidence to prove any of the three bases for commitment. His claim of error is therefore unpreserved. The remaining question is whether to provide discretionary plain-error review. *See* ORAP 5.45(1) (providing for same); *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2019) (an error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences). Appellant has not requested plain-error review, and we could decline to provide it on that basis. ORAP 5.45(7) ("The court may decline to exercise its discretion to consider plain error absent a request explaining the reasons that the court should consider the error."); *State v. Efimoff*, 346 Or App 402, 407, 584 P3d 1274 (2026) (recognizing that we normally will not review for plain error in the absence of request, but that we have discretion to do so). However, in this instance, we choose to provide it. Our post-2009 case law has tended to conflate the two different ways of assigning error, which has ramifications for preservation that may have been unclear. Moreover, appellant's arguments are easily translated into plain-error arguments, and we do not perceive this to be a situation in which appellant strategically chose not to request plain-error review. We therefore proceed with plain-error review.

## II.   ANALYSIS

To order civil commitment, a trial court must find that a person is a danger to self or others or is unable to meet their own basic needs. ORS 426.005(1)(f)(A), (B) (2023), *amended by* Or Laws 2025, ch 559, § 4. In this case, the trial court found civil commitment appropriate on all three

bases, acknowledging that only one was required to order civil commitment.[1]

A.  *Basic Needs*

Appellant first argues that the evidence was insufficient to prove that, because of a mental disorder, he was unable to provide for his basic needs.

The state may prove that a person is unable to provide for their basic needs—such as food, water, and medical care—by showing that the person is unable to do so "in a way that leaves the person at nonspeculative risk of serious physical harm—meaning that the person's safe survival will be compromised—in the near future, even though that risk is not imminent." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019) (internal quotation marks omitted); *State v. M. A.*, 276 Or App 624, 631, 371 P3d 495 (2016).

On this record, the court did not plainly err in determining that appellant was unable to provide for his basic needs as a result of his mental disorder. Appellant reported to mental healthcare providers that he would have died of heat exhaustion a week earlier if someone had not intervened to care for him. He was living in a teepee and frequently walking barefoot in the extreme heat. His feet became so raw that he sometimes could not walk to obtain water; he relied on others to bring him food and water. Appellant's psychiatrist noted that appellant would not eat or drink unless prompted or provided with food.

It is reasonably disputable whether the evidence was sufficient to establish that appellant was unable to provide for his basic needs in a manner necessary to avoid serious physical harm in the near future. *See State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (an error is not plain if it is reasonably in dispute). Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not plainly err in reaching its conclusion.

---

[1] The legislature recently made significant amendments to the civil commitment statutes, which became operative on January 1, 2026. Or Laws 2025, ch 559, § 66. Appellant was committed under the previous version of the statutes, so our analysis is based on the previous version of the statutes.

B.   *Danger to Self*

Appellant next challenges the sufficiency of the evidence to support the trial court's ruling that he was a danger to himself.

To establish that a person is dangerous to self, the state must prove that the person's mental disorder would cause behavior "likely to result in physical harm *** in the near term." *B. B.*, 240 Or App at 82. The harm must be serious and more than speculative. *State v. R. E.*, 248 Or App 481, 491, 273 P3d 341 (2012).

Any asserted error is not plain, as the record contains evidence from which the court could at least arguably determine that appellant's bipolar mania caused him to engage in behavior highly likely to result in serious physical harm to himself. One week before hospitalization, appellant intentionally drove his car into an embankment because he believed his ex-wife was controlling it. He then traveled barefoot in 90-degree heat, using peanut butter on his body and feet for protection. In past manic episodes, appellant walked barefoot in extreme heat to prove he was a prophet, suffered second-degree burns after lying outside naked, and walked barefoot in the snow. Past acts may be considered to show future danger so long as there is no indication that the act was an isolated occurrence. *State v. D. R.*, 239 Or App 576, 583-84, 244 P3d 916 (2010).

The trial court did not plainly err by concluding that the evidence was sufficient to support a ruling that appellant was a danger to himself.

C.   *Danger to Others*

Finally, appellant challenges the sufficiency of the evidence supporting the trial court's determination that he was dangerous to others.

To show that a person is a danger to others, the state must prove that the person's mental disorder makes the person "highly likely to engage in future violence toward others, absent commitment." *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019). A single violent act may suffice, and verbal threats may be enough when accompanied

by overt acts or other circumstances indicating that actual future violence is highly likely. *State v. J. G.*, 302 Or App 97, 100-01 n 3, 458 P3d 721 (2020); *State v. L. R.*, 283 Or App 618, 625, 391 P3d 880 (2017).

Again, the trial court did not plainly err. The evidence showed that, in the weeks leading up to the hearing, appellant repeatedly threatened serious violence against others, including threats accompanied by overt acts. He told his sister that he had arranged their mother's house so that he could burn it down. He told a friend that he wanted to kill a neighbor. Most significantly, appellant confronted his sister and 18-year-old niece while brandishing a knife in each hand and demanding car keys. He got into his sister's face and taunted her, saying, "Just touch me, just touch me." When the encounter ended, appellant ripped the rear windshield wiper from a car and threw it at his sister. Family members also reported that appellant had been making threats indicating that command auditory hallucinations were telling him to kill his mother, sisters, and ex-wife. During a prior manic episode, appellant punched his then-wife. On another occasion, according to the testimony of his ex-wife, he threatened to sacrifice his daughter "on the altar of the Mormon church," prompting his ex-wife to obtain a restraining order.

Given appellant's recent threats, his overt acts with weapons, and his history of violence during manic episodes, a rational factfinder could at least arguably determine that appellant was dangerous to others because of his mental disorder. The trial court, therefore, did not plainly err in so concluding.

### III. CONCLUSION

Civil commitment proceedings implicate substantial liberty interests. Nevertheless, the ordinary rules of preservation apply. Here, appellant did not preserve his legal sufficiency challenges, and the record contains ample evidence to support the trial court's legal conclusion that appellant was a danger to himself and others and was unable to meet his basic needs. Therefore, the trial court did not plainly err in its judgment ordering civil commitment.

Affirmed.